UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIE L. GIBSON, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> KEITH ANGLIN, Warden, ) <br> Danville Correctional Center, ) <br> ) <br> Respondent. ) | No. 12-C-0397 <br> Hon. Marvin E. Aspen |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Petitioner Willie L. Gibson, a prisoner at Danville Correctional Center, where Respondent Keith Anglin is Warden, petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254; he has also filed a motion for appointment of counsel. For the reasons set forth below, we deny both petitions.

### FACTUAL AND PROCEDURAL BACKGROUND

**I. Summary**

In October 2001, Gibson was charged in the Circuit Court of Lake County with the offense of unlawful possession of a controlled substance with the intent to deliver. (Resp. Ex. A, Rule 23 Order, *People v. Gibson*, No. 02-03-0755 at 1 (Ill. App. 2nd Dist. 2005).) After a bench trial, Gibson was convicted of possession of cocaine with the intent to deliver, and was

sentenced to twenty-four years imprisonment. (*Id.* at 1–2.) The facts underlying Gibson's conviction are as follows.[1]

## II. Gibson's Conviction

On September 10, 2001, Waukegan Police Sergeant Wayne Walles and detectives Darren Smith, Scott Chastain, Edward Heidler, and Steve Hollister were part of a neighborhood enforcement team conducting narcotic investigations. (*Id.* at 2.) These officers were also working alongside an informant named King Bell, who had previous contact with police. (*Id.*) According to Heidler, Bell indicated to him and the other officers that he could buy crack cocaine from Gibson. (*Id.* at 3.) In exchange for Bell's assistance, the officers indicated that Bell would get "consideration" if an arrest was made, and Bell was also hoping to get some of his prior cases dismissed. (*Id.* at 3–4, 8.) Chastain gave Bell $20 to purchase drugs from Gibson. (*Id.* at 4.) Bell was also searched for contraband, paraphernalia, and money prior to the operation, and none was found. (*Id.*) Heidler then observed Bell enter a residence, and minutes later, leave with Gibson in a Chevrolet Suburban vehicle. (*Id.*)

A short time later, Bell contacted Hollister from inside a hotel room and informed him that he had purchased rock cocaine from Gibson and that Gibson had "more on him in the vehicle." (*Id.* at 4–5.) Hollister then relayed this information to the other officers and advised them that Gibson's vehicle was eastbound on Belvidere Street. (*Id.* at 4–6.) Subsequently, Smith observed Gibson's vehicle and began following it. (*Id.* at 2.) After Walles notified Smith

---

[1] The state court's account of the facts is presumed correct because it has not been rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547, 101 S. Ct. 764, 769–70 (1981).

that Gibson had committed two traffic infractions, Smith conducted a traffic stop based on the infractions and his prior knowledge that contraband was in the vehicle. (*Id.*)

The other officers arrived at the traffic stop shortly thereafter, whereby Chastain observed that Gibson had a black bag in his hand that he appeared to be shoving toward the center console area. (*Id.* at 7.) Chastain and Walles observed Gibson reaching for the black bag as he stepped out of the vehicle, and Walles advised Gibson not to grab it. (*Id.*) Heidler then recovered the bag, and informed Chastain that drugs were inside the bag. (*Id.*) Gibson was placed under arrest and taken into custody. (*Id.* at 7–8.)

While Smith and Bell were outside the vehicle, Bell informed Smith that he had purchased $20 worth of cocaine from Gibson and presented it to him. (*Id.* at 3.) Bell also informed Smith that inside the center console of the vehicle was a black travel bag containing cocaine and heroin, and Smith relayed this information to the other officers. (*Id.* at 3–4.) Bell was then transported by Smith back to the police station, where Bell informed Smith and Chastain that before being stopped by police, he and Gibson were en route to 534 South Avenue, a location that contained narcotics and money. (*Id.* at 3.) According to Smith, Hollister, and Heidler, the police department had several written complaints from anonymous citizens that high narcotics activity took place at that location. (*Id.* at 3, 5–6.) After receiving Gibson's verbal consent to search the residence, the hotel room, and another location, as well as written consent from the residence's occupant, Henrene McKay, Smith and Chastain investigated and subsequently discovered cocaine, other drugs, and a gun. (*Id.* at 3, 6.)

Prior to trial, Gibson filed a motion to suppress the evidence that was acquired during the search of the black bag in his vehicle. (*Id.* at 1.) At an evidentiary hearing, Gibson testified that

3

he did not give consent to the police to search the residence or the hotel room, and that the purpose of his meeting with Bell was to buy merchandise from him. (*Id.* at 9.) Gibson also denied committing any traffic infractions, making any movements towards the center console of the vehicle, trying to hide anything, or reaching for anything when he was stopped by the police. (*Id.*) Gibson did admit that the black bag in the vehicle belonged to him and that it contained contraband, and that he knew Bell was a drug user and not a drug dealer. (*Id.*) Bell testified that he gave Gibson $20 and purchased drugs from Gibson, and that Gibson got the drugs out of a "black pouch" in his vehicle. (*Id.* at 8.) Bell stated that he "might have" told the police that the drugs were in the console in Gibson's car, but he could not recall. (*Id.*) However, on cross-examination, Bell acknowledged that he told the officers there were more drugs in the vehicle. (*Id.* at 8–9.)

After the evidentiary hearing, the trial court found that the stop of the car was proper, "even though it may have been a pretextual stop." (*Id.* at 10.) The trial court noted that many details provided to police by Bell matched with the police's own observations, and under the "totality of the circumstances," the search was justified. (*Id.*) Gibson then filed a motion to reconsider, which the trial court also denied, reiterating its conclusion that the stop and search of Gibson's vehicle were proper. (*Id.* at 11.) In denying Gibson's motion, the trial court considered Bell's production of the drugs to the officers following Gibson's arrest, the subsequent conversation with the officers as to the location of the black bag, and the police officers' own observations of the black bag as factors supporting the constitutionality of the search of Gibson's vehicle. (*Id.* at 12.)

4

Following a bench trial, Gibson was found guilty of possession of cocaine with the intent to deliver. (*Id.* at 12.) Gibson filed a post trial motion, alleging, inter alia, that: (1) his arrest and the search of his vehicle were illegal; (2) the State failed to disclose its arrangement with Bell and that Bell lied about his arrangement with the State at the motion to suppress hearing; (3) the State misled the trial court in its argument on the motion to suppress; (4) the trial court erred in denying the motion to suppress; and (5) the State failed to connect Gibson to the contraband found in the hotel room. (Resp. Ex. B, Rule 23 Order, *People v. Gibson*, No. 02-04-1083 at 3 (Ill. App. 2nd Dist. 2006).) Gibson subpoenaed Bell, and Bell appeared at the next scheduled date for the hearing, but the matter was continued. (*Id.* at 4.) Bell failed to appear at any subsequent hearings despite the issuance of a subpoena and bench warrant. (*Id.*)

At Gibson's post trial hearing, the trial court permitted into evidence a copy of Gibson's post trial motion for a new trial signed by Bell and the report of a defense investigator which stated that Bell signed Gibson's post trial motion to indicate he agreed with the facts stated therein. (*Id.*) Gibson also entered into evidence an order that showed, as part of a fully negotiated plea, Bell received both charging and sentencing concessions in exchange for his truthful testimony in Gibson's case. (*Id.*) However, the State entered into evidence affidavits from the assistant State's Attorneys in Gibson's and Bell's cases, both of which stated that Bell was not required to testify to a specific statement of facts, and that there was no consideration given in exchange for Bell's testimony. (*Id.*)

The trial court denied Gibson's post trial motion for a new trial, finding that Bell's unsworn signature on Gibson's motion was contradicted by Bell's testimony under oath at the hearing on the motion to suppress, and that the record supported a conclusion that there was no

5

agreement between the State and Bell at the time Bell testified at the motion to suppress hearing. (*Id.*)  Gibson was subsequently sentenced to twenty-four years in prison.  (*Id.* at 5.)

### III.  Gibson's Direct Appeal

On direct appeal before the Illinois Appellate Court, Gibson argued that the trial court erred in its denial of his motion to suppress because: (1) the police officers did not have reasonable suspicion at the traffic stop to justify their investigation based on a tip that he possessed cocaine; and (2) the police did not have probable cause to justify searching his vehicle.  (Resp. Ex. A, Rule 23 Order, *People v. Gibson*, No. 02-03-0755 at 12 (Ill. App. 2nd Dist. 2005).)  The Appellate Court rejected Gibson's claims, ruling that: (1) the officers' initial traffic stop was justified at its inception, and the officers reasonably believed they were confronting a situation far more serious than a traffic stop; and (2) based on their training and observations, the anonymous reports of drug activity at the 534 South Avenue house, and the information received from Bell, the officers reasonably believed that the black bag contained contraband and thus had probable cause to search Gibson's vehicle.  (*Id.* at 14–15, 22–23.)

Gibson subsequently filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, arguing that police did not have probable cause to search his vehicle.  (Resp. Ex. M, PLA, *People v. Gibson*, No. 101383, at 14.)  The Illinois Supreme Court denied his petition.  (Resp. Ex. N, Order Denying Direct Appeal PLA, *People v. Gibson*, No. 101383 (Ill. 2005).)

### IV.  Post-Conviction Proceedings

Gibson, pro se, sought post-conviction relief from his judgment by filing two petitions collaterally attacking his conviction: a petition for relief from judgment pursuant to Section 2-1401 of the Code of Civil Procedure, 735 Ill. Comp. Stat. Ann 5/2-1401, and a petition for post-

conviction relief pursuant to the Post-Conviction Hearing Act, 725 Ill. Comp Stat. Ann. 5/122-1. (Resp. Ex. G, Order, *People v. Gibson*, No. 2-09-0683 at 2 (Ill. App. 2nd Dist. 2011).)

*A. Gibson's § 2-1401 Petition*

Gibson's § 2-1401 petition alleged, inter alia, that the State obtained his conviction through fraud, claiming that: (1) Bell was not credible and that the police stop of his vehicle was pretextual; (2) the State did not disclose the plea deal it gave Bell in exchange for his help to the State; (3) the State permitted Bell to lie about his deal to the trial court and threatened him to prevent him from testifying at Gibson's motion for a new trial; and (4) the assistant State's Attorneys' arguments at the hearing on the motion to suppress were not based on the evidence. (Resp. Ex. B, Rule 23 Order, *People v. Gibson*, No. 02-04-1083 at 5 (Ill. App. 2nd Dist. 2006).) Gibson also attached an affidavit from Bell stating: (1) he never knew about a black bag in Gibson's vehicle and never informed the officers of its location; (2) he was forced by the State into lying at the motion to suppress hearing; (3) he was intimidated by the State into not testifying for Gibson; and (4) he never purchased cocaine from Gibson, instead purchasing it from another dealer. (*Id.* at 5–6.) The State filed a motion to dismiss Gibson's § 2-1401 petition, and the trial court granted the motion. (*Id.* at 6–7.) Gibson subsequently appealed. (*Id.* at 7.)

On appeal, the court reversed and remanded the case to the trial court to conduct an evidentiary hearing, ruling that the trial court abused its discretion when it failed to conduct an evidentiary hearing on Bell's recanted testimony. (Resp. Ex. G, Order, *People v. Gibson*, No. 2-09-0683 at 2 (Ill. App. 2nd Dist. 2011).) After an evidentiary hearing, the trial court again denied Gibson's § 2-1401 petition, finding that: (1) Gibson failed to establish by clear and

7

convincing evidence that the State procured perjured testimony from Bell; (2) neither the State nor the officers were responsible for Bell's nonappearance at Gibson's motion to suppress hearing; and (3) Bell's affidavit was untrustworthy because it completely contradicted the testimony he provided during the suppression hearing. (Resp. Ex. D, 2-1401 Order, *People v. Gibson*, No. 01 CF 3007 (Lake Cty. Cir. Ct. 2007).)

*B. Gibson's Post-Conviction Relief Petition*

The trial court's summary dismissal of Gibson's petition for post-conviction relief was originally reversed and remanded because the trial court failed to dismiss his petition within 90 days of filing and docketing. (Resp. Ex. E, Order, *People v. Gibson*, No. 2-06-0821 at 1 (Ill. App. 2nd Dist. 2007).) On remand, Gibson was appointed counsel, and his petition alleged that: (1) the State violated his constitutional rights by presenting perjured testimony before the grand jury and in his motion to suppress hearing; (2) his pre-trial counsel was ineffective for failing to seek a dismissal of his indictments, failing to obtain transcripts of his suppression hearing before filing a motion to reconsider that hearing, failing to investigate the relationship between the State and Bell, and for failing to be prepared for his motion to reconsider hearing; (3) his appellate counsel was ineffective for failing to raise a claim of fraud against the State; (4) police conducted an unconstitutional search; (5) the State violated his constitutional rights by concealing material evidence; and (6) his constitutional rights were violated by having the trial judge preside over his case. (Resp. Ex. F, 2-1401 and Post-Conviction Order, *People v. Gibson*, No. 01 CF 3007 at 1–2 (Ill. App. 2nd Dist. 2007).) Subsequently, Gibson also filed a pro se notice, which claimed, inter alia, that he did not believe the post-conviction petition was sufficient because it did not include claims raised in his § 2-1401 petition. (Resp. Ex. L, Notice

of Insufficient Amended Petition, *People v. Gibson*, No. 01 CF 3007 at 5.) The trial court granted the State's motion to dismiss, holding that the claims raised in Gibson's § 2-1401 petition were barred by res judicata and collateral estoppel, that Gibson received a full and fair motion to suppress hearing, and that any remaining allegations made by Gibson failed to make a substantial showing that his constitutional rights were violated. (Resp. Ex. F, 2-1401 and Post-Conviction Order, *People v. Gibson*, No. 01 CF 3007 at 2 (Ill. App. 2nd Dist. 2007).)

*C. Post-Conviction Appeals*

On a consolidated appeal of his § 2-1401 and post-conviction petitions, Gibson challenged only the trial court's second-stage dismissal of his post-conviction petition. (Resp. Ex. G, Order, *People v. Gibson*, No. 2-09-0683 at 3 (Ill. App. 2nd Dist. 2011).) He alleged that: (1) his appellate counsel was ineffective on direct appeal for failing to challenge the seizure of evidence from his vehicle in his trial for the drugs found in the hotel room; and (2) the police violated his Fourth Amendment right to be free from unreasonable search and seizure. (*Id.*)

The Appellate Court rejected both claims, affirming the trial court's dismissals of the § 2-1401 and post-conviction petitions. (*Id.*) The court held first that Gibson's appellate counsel was not "objectively unreasonable" in deciding not to challenge the seizure of evidence because: (1) Detective Smith testified at the suppression hearing of his knowledge that contraband was inside Gibson's vehicle and that he and the other officers were given verbal consent by Gibson to search the hotel room; and (2) the evidence seized from the traffic stop of Gibson's vehicle was admissible under Illinois evidentiary law to prove intent, establish possession, and connect Gibson with the contraband found in the residence. (*Id.* at 5–6.) The court further held that because Gibson's counsel's performance was not objectively unreasonable, Gibson suffered no

9

prejudice and he could not establish that, absent the failure to challenge the seizure of evidence, his conviction would have been reversed on direct appeal. (*Id.* at 6.) With regards to Gibson's second claim, the court held that because an action for post-conviction relief is a collateral attack upon a prior conviction and sentence, the claim was barred by res judicata. (*Id.* at 7.)

Gibson subsequently filed a PLA to the Illinois Supreme Court, arguing only that: (1) the appellate court should have considered the arguments in his pro se notice; and (2) the appellate court should have relaxed the doctrines of res judicata and waiver and heard his claims. (Resp. Ex. O, PLA, *People v. Gibson*, No. 112648 at 3.) The Illinois Supreme Court denied Gibson's PLA. (Resp. Ex. P, Notice of PLA Denial, *People v. Gibson*, No. 112648 (Ill. 2011).)

## V. Federal Habeas Petition

After exhausting his state court remedies, Gibson filed a pro se petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254, asserting the following claims:[2]

> (1) Denial of his Fourth Amendment rights from the search of the black bag in his vehicle;
>
> (2) Prosecutorial misconduct or violation of due process of law for the denial of a fair trial by the acts and non-acts of trial attorneys;
>
> (3) Ineffective assistance of pretrial counsel for:
>
> > (a) failing to investigate Bell's relationship with the prosecution and the officers;
> >
> > (b) failing to cross-examine the officers and Bell at the suppression hearing; and
> >
> > © failing to move to dismiss the indictment against him;
>
> (4) Ineffective assistance of appellate counsel for:
>
> > (a) failing to effectively argue his Fourth Amendment claim;
> >
> > (b) failing to argue his prosecutorial misconduct claims;
> >
> > © failing to argue his ineffective assistance of pretrial counsel claim;
> >
> > (d) failing to argue for the re-opening of his motion to suppress hearing;

---

[2] In the substance of this opinion, we refer to claims by the numbers listed above.

10

(e) failing to argue against the sufficiency of the evidence against him; and

(f) failing to raise any issues other than his Fourth Amendment claim. (Pet. at 6-11.)

## STANDARD OF REVIEW

Before we may consider a petition for writ of habeas corpus on its merits, the petitioner must give the state courts one full opportunity to resolve any constitutional issues by proceeding through the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). To give the state courts one full opportunity and thereby avoid procedural default, the petitioner must: (1) exhaust all available state court remedies; and (2) fairly present any federal claims in state court. 28 USC § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971).

A petitioner exhausts his remedies when no state remedies relating to his claims remain available. 28 U.S.C. § 2254(c); *Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1732; *Picard*, 404 U.S. at 275, 92 S. Ct. at 512. Otherwise, the exhaustion doctrine precludes the federal court from hearing the petition. *Perruquet v. Briley*, 390 F.3d 505, 513–14 (7th Cir. 2004).

A petitioner fairly presents his claim by asserting both the operative facts and the controlling legal principles through one full round of the state's established appellate process, either on direct appeal or in post-conviction proceedings. *Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1732–33; *Malone*, 538 F.3d at 753; *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). One full round includes levels in which review is discretionary rather than mandatory. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004); *Lewis*, 390 F.3d at 1025. Thus, for federal habeas relief from a conviction in Illinois state court, the petitioner must assert each claim for which he seeks relief to both the Illinois Appellate Court and the Illinois Supreme

Court.  *Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1732; *Smith v. McKee*, 598 F.3d 374, 383 (7th Cir. 2010).  The key to fair presentment, however, is that the substance of the federal claim is presented.  *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992) (citing *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982)).  The petitioner must present his federal claims to the state courts by asserting both the law and the facts underlying them.  *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).  While the petitioner may reformulate his claims, the substance must remain the same.  *Byers*, 610 F.3d at 985; *Sweeney v. Carter*, 361 F.3d 327, 333 (7th Cir. 2004).

If the petitioner fails to comply with the abovementioned requirements, he has procedurally defaulted.  See *Boerckel*, 526 U.S. at 853–54, 119 S. Ct. at 1737.  To overcome a procedural default, the petitioner bears the burden of proving: (1) cause for the default and actual prejudice as a result of the alleged violation; or (2) that the default "would lead to a 'fundamental miscarriage of justice.'"  *House v. Bell*, 547 U.S. 518, 536, 126 S. Ct. 2064, 2076 (2006); *Lewis*, 390 F.3d at 1026.  First, to demonstrate cause, the petitioner must be able to show that some objective factor external to his defense impeded efforts to present the federal claim in state court.  *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010); *Smith*, 598 F.3d at 382.  To meet the prejudice requirement, the petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Perruquet*, 390 F.3d 505, 514–15 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982)).  Finally, the "fundamental miscarriage of justice" exception requires that the petitioner actually demonstrate his innocence.  *Gonzales v. Mize*, 565 F.3d 373, 381 (7th Cir. 2009); *Lewis*, 390 F.3d at 1026.

## ANALYSIS

*A. Claim 1: Violation of Gibson's Fourth Amendment Rights from the Search of the Black Bag*

As Gibson has exhausted all state court remedies related to this claim and has presented his federal claim in state court, he has not procedurally defaulted on Claim 1. After the denial of his motion to suppress, Gibson brought his Fourth Amendment claim through each level of the state appellate process, both on direct appeal and during his post-conviction proceedings. At each level, the substance of Gibson's claim remained the same—that the police conducted an illegal search and seizure of his vehicle. Thus, because no state remedies remain available, Gibson has not procedurally defaulted on his first claim.

Nonetheless, we cannot review Gibson's Fourth Amendment claim. We do not apply the exclusionary rule in Fourth Amendment habeas claims for fear that it would "generat[e] disrespect for the law and the administration of justice." *Cabrera*, 324 F.3d at 532 (quoting *Stone*, 428 U.S. at 491, 96 S.Ct. at 3051). "So long as a habeas petitioner enjoyed an 'opportunity for full and fair litigation of a Fourth Amendment claim' in state court, federal habeas review of the claim is barred." *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005) (quoting *Stone v. Powell*, 428 U.S. 465, 481–82, 96 S.Ct. 3037, 3046 (1976)). "A petitioner has had the benefit of such an opportunity so long as: (1) he clearly appraised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts." *Miranda*, 394 F.3d at 997 (citing *Cabrera v. Hinsley*, 324 F.3d at 531 (7th Cir. 2003)). In determining whether a state court applied the proper constitutional case law, we must only look to see if it "look[ed] to the appropriate body of decisional law," not to how it applied

13

the law. *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002). Additionally, the Seventh Circuit has held "that 'full and fair opportunity' guarantees only 'the right to present one's case,'" and not an examination of whether the state courts "'got the decision right.'" *Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007) (quoting *Cabrera*, 324 F.3d at 532). "We presume the state court's factual findings to be correct, unless the petitioner rebuts the presumption by clear and convincing evidence." *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325 (2005)).

The facts in the present case establish that Gibson received a full and fair opportunity to litigate his claim. Gibson asserts in his habeas petition that he was arrested without probable cause, alleging that Bell's sworn testimony providing information about the drugs in Gibson's vehicle was coerced by the officers and the State. (Pet. at 6.) However, not only did Gibson bring his Fourth Amendment claim at his pretrial motion to suppress hearing, but also in the post trial hearings regarding his motion to suppress and in each filed appeal. At Gibson's post trial hearing, the trial court carefully considered Gibson's argument that there was an agreement between the State and Bell for charging and sentencing concessions, and rejected it due to a lack of support in the record. (Resp. Ex. B, Rule 23 Order, *People v. Gibson*, No. 02-04-1083 at 4 (Ill. App. 2nd Dist. 2006).) On remand of his § 2-1401 claim, the trial court relied on testimony from "a number of witnesses" and "judg[ed] their credibility as they testified," to find that Gibson failed to establish by "clear and convincing evidence" that the State procured perjured testimony from Bell. (Resp. Ex. D, 2-1401 Order, *People v. Gibson*, No. 01 CF 3007 (Lake Cty. Cir. Ct. 2007).) The trial court also carefully analyzed Bell's affidavit, and rejected it for being

"completely contradict[ory]" to the testimony he gave at Gibson's suppression hearing. (*Id.*) At each stage, the state courts applied the correct decisional law.

Thus, Gibson had multiple opportunities to present his Fourth Amendment claim, and at each level, the state courts carefully and thoroughly analyzed the facts before reaching a decision on his claim. As Gibson has not presented any clear and convincing evidence to rebut the state court factual findings, his Fourth Amendment claim is denied.

B. *Claim 2: Prosecutorial Misconduct or Violation of Due Process of Law for the Denial of a Fair Trial by the Acts and Non-Acts of Trial Attorneys*

In Claim 2 of his habeas petition, Gibson contends that the State intentionally used alleged perjured testimony from Bell and that this resulted in a violation of his Fifth and Fourteenth Amendment rights. (Pet. at 8.) The State argues that Gibson procedurally defaulted this claim because he did not challenge the denial of the claim on appeal. (Answer at 17.)

In his direct appeal, Gibson claimed only that his Fourth Amendment rights were violated due to a lack of probable cause for the stopping and searching of his vehicle. (Resp. Ex. A, Rule 23 Order, *People v. Gibson*, No. 01-05-3007 at 12 (Ill. App. 2nd Dist. 2005).) In his post-conviction § 2-1401 petition, Gibson claimed that the State permitted Bell to lie about an alleged plea deal to the trial court and threatened Bell to prevent him from testifying at Gibson's motion for a new trial. (Resp. Ex. B, Rule 23 Order, *People v. Gibson*, No. 02-04-1083 at 5 (Ill. App. 2nd Dist. 2006).) However, Gibson did not assert these claims to the Illinois Appellate Court, and only asserted to the Illinois Supreme Court in his PLA that the appellate court should have considered the arguments in his pro se notice. Therefore, Gibson did not fairly present this claim through one full round of post-conviction proceedings.

15

To overcome a procedural default, Gibson must show cause for the default or actually prove his innocence. *Lewis*, 390 F.3d at 1026. Gibson asserts that the prosecutorial misconduct claim was not put forward at his post-conviction appeal because his appellate defender refused to do so. However, such claims of ineffective assistance of counsel must be presented as independent claims through one full round of state court "before [they] may be used to establish cause for a procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 447, 120 S.Ct. 1587, 1589 (2000); *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 2646 (1986). As explained below, Gibson did not raise an ineffective assistance of counsel claim in one full round of state court, and therefore this claim cannot be used as support for his procedural default. As Gibson has also failed to present evidence that demonstrates his innocence, he has procedurally defaulted on his second claim.

C. *Claims 3 & 4: Ineffective Assistance of Pretrial Counsel & Ineffective Assistance of Appellate Counsel*

Gibson similarly defaulted on Claims 3 & 4, alleging that both his pretrial counsel and his appellate counsel were ineffective for, inter alia, failing to challenge the material facts or evidence at issue or "adequately" investigate the relationship between Bell, the prosecutors, and police. (Pet. at 9, 11.) As above, Gibson failed to bring these claims through one complete round of review in the Illinois courts. Gibson's post-conviction relief petition asserted that his pretrial counsel was ineffective for various reasons and his appellate counsel was ineffective for failing to raise a claim of fraud against the state. However, in his post-conviction appeal, Gibson only alleged that his appellate counsel was ineffective on direct appeal for failing to challenge the seizure of evidence from the vehicle. Further, Gibson did not address ineffective assistance

16

claims in his PLA at all. Therefore, he failed to bring any ineffective assistance claim through a full round of state proceedings, and Claims 3 and 4 are procedurally defaulted. Moreover, Claim 4 cannot be saved based on appellate counsel's refusal to argue it in the post-conviction appeal. (Pet. at 12.) As explained above, such claims of ineffective assistance of counsel must themselves be presented as independent claims through one full round of state court.

Finally, ineffectiveness or incompetence of counsel during a post-conviction proceeding is not a ground for relief in federal habeas corpus proceedings. *Murray v. Giarratano*, 492 U.S. 1, 26–27, 109 S. Ct. 2765, 2779 (1989); *Johnson v. McBride*, 381 F.3d 587, 590 (7th Cir. 2004); 28 U.S.C. § 2254(I). Therefore, to the extent that Claim 4 contests the post-conviction appellate attorney's performance, it is not cognizable on federal habeas review and would be dismissed, even if not defaulted.

## MOTION FOR APPOINTMENT OF COUNSEL[3]

In a habeas petition, counsel may be appointed under 28 U.S.C § 3006A if "the interest of justice so require[s]." 28 U.S.C. § 3006A(a)(2). Appointment of counsel under this statute "is a power commended to the discretion of the district court in all but the most extraordinary circumstances." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997); *see also LaClair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967) ("[A]ppointment of counsel for indigents in habeas corpus and section 2255 proceedings rests in the sound discretion of district courts unless denial would result in fundamental fairness impinging on due process rights."). A court should appoint counsel "if, given the difficulty of the case and the litigant's ability, [he] could not obtain

---

[3] While a ruling on a motion for appointment of counsel would typically be decided prior to a decision on the merits, Gibson filed his motion for appointment of counsel at the same time that he filed his reply memorandum on the pending habeas petition. Therefore, we address the two motions together.

17

justice without an attorney, [he]could not obtain a lawyer on [his] own, and [he] would have had a reasonable chance of winning with a lawyer at [his] side." *Forbes v. Edgar*, 112 F.3d 262, 264 (7th Cir. 1997). In the pending motion, Gibson states that he contacted three law firms and was unable to obtain representation. It is doubtful that this is sufficient to establish that he could not obtain an attorney on his own. Regardless, we will not appoint a lawyer at this time. As explained above, Gibson's petition for habeas corpus must be dismissed. While the "'reasonable chance of success' element of our review [of this motion] is less demanding than our ultimate assessment" of the merits, his motion must fail. *See Winsett*, 130 F.3d at 281–82. Due to Gibson's procedural default, there is no reasonable chance of success on the habeas petition, and appointed counsel would not be able to prevent the result reached in this opinion. Therefore, we deny Gibson's motion for appointment of counsel.

## CONCLUSION

For the reasons set forth above, we deny Gibson's petition for habeas corpus and motion for appointment of counsel. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: Chicago, Illinois
September 11, 2012